The Abduction of Jesse Adkins 07-3180 Linda Springer, Director of the Office of Personnel Management against James The minimum annuity subsection is clearly meant to occur when the annuitant's primary disability annuity, which is computed under 8452 subsection A, is offset by Social Security benefits. And that's also the reason that subsection D is accepted from A, B, and C of subsection 8452 because the whole structure of the statute shows that it is a minimum annuity provision. And like I said before, the purpose is to provide the disabled annuitant with a minimum annuity in the event his annuity is completely offset by the receipt of Social Security disability benefits. Also, you look at the language of subsection D, shall not be less than, when it says, shall not be less than an annuity computed under subsection 8415. This also shows that it is meant to be a minimum annuity provision. And if you look at 8415, now granted, the statute would have been clear if it had said, shall not be less than an annuity computed under subsection 8415A. But when you look at subsection 8415, clearly the minimum annuity provision of that subsection is 8415A. Because I believe all the other subsections provide enhanced rates with the exception of G, which provides a reduction. You're not saying that Pittsburgh should be revisited or was wrongly decided? No, Your Honor. You're drawing quite a fine line, aren't you, otherwise? No, I mean, we disagree with Pittsburgh, but we recognize that this court is bound by that decision. And we don't believe it needs to be revisited because FERS has substantial differences in structure and language. You have to look at the 8452 language as a whole because it's a much more complex calculation, granted, than the calculation under CSRS because it's meant to work in conjunction with Social Security disability benefits. It also has multiple calculations over the course of the disability annuity. But we believe that the language and structure of 8452 is what distinguishes it from CSRS and also makes the MSPB's interpretation erroneous in this situation because of the effect of the MSPB's interpretation on the other provisions of Section 8452, most notably B and C. Are you saying that the government, at least your branch of the government, disagrees with Pittsburgh as a matter of policy? We disagree as a matter of law. The law has been announced. Right. Yes, we disagree as a matter of law. The law has been announced. Right. We're not asking the court to revisit Pittsburgh. But our obligation is to apply it, not to disagree with it. That's correct, Your Honor. That's why I'm trying to understand the line that you're drawing here. Because the line is where we believe the law is different in this situation, that there are differences between the language and the structure of 8452 in contrast to the statute that was analyzed in Pittsburgh. And that's where the line that we're drawing is that... Your answer to Judge Newman really is that this isn't a Pittsburgh case. Yes. Yes, Your Honor. Different statute? It's a different statute, and there's different structure and language, and that is why we believe it has to have a different interpretation. But if the policy underlying these different laws is to favor firefighters and those who have held hazardous occupation, why should the analysis differ? Well, we don't believe that. We also believe that there is a distinction with Pittsburgh in that the funding for these annuities under Section 8452 is... Law enforcement firefighter annuities under FERS is substantially different from CSRS, where the court in CSRS under Pittsburgh considered the funding structure and noticed that the law enforcement officers contribute more, which later funds their annuity. In this situation, the law enforcement officers' contribution to the retirement fund is very minuscule compared to the agency's contribution. So the agency is really the person funding the law enforcement or firefighter annuity in this situation. But it's also a matter of... Although there is... Although both statutes provide early retirement and enhanced benefit for firefighters, you have to look at that intention with the language of the statute. And here, it's not really a Pittsburgh statute. As Judge Lori pointed out, it is a different type of statute. And here, most notably, you have subsection C, which specifically requires agent service criteria to receive an annuity computed under subsection 8415. And that's a major difference between these two statutes, the CSRS statute and the FERS statute. And at the time... And there hasn't been a change in the FERS statute since it was enacted in 19... I mean, that calculation has not changed since it was enacted in 1986. And here, the MSPB's interpretation of 8452D specifically renders section 8452C superfluous. Because if a firefighter was already receiving the greater annuity between 8452A or 8415D, based on the minimum... Based on the requirement of 8452D, then there would be no need to have subsection C. Subsection C serves no purpose. But under OPM's interpretation, if the firefighter meets the minimum age and service requirements to get an immediate annuity, but however they take disability annuity, they can get an enhanced annuity under section 8452C and they don't have to worry about the initial computation for Social Security disability benefits. And also, this court relied in Pittsburgh a lot on the legislative history of CSRS, and there is not a similar legislative history under FERS. We're not disputing that both systems provide an earlier retirement age for law enforcement officers and enhanced benefits for law enforcement officers who meet the age and service criteria. However, in CSRS, there was specifically, in the legislative history, a notation that the disability annuity should be computed the same way as the immediate retirement annuity. In the legislative history of FERS, there is no such statement. In fact, they note that the disability annuity computation formulas are very complex because of its interaction with Social Security disability benefits. If there are no further questions, I'll reserve my time for rebuttal. Thank you. Thank you, Ms. Conrad. May it please the court. Mr. Morrow. The court should affirm the board's decision because it gives effect to the plain language of this FERS provision of 8452D, and the arguments that OPM has made to attempt to distinguish the FERS statute from the CSRS statutes that were ruled on in Pittsburgh are not persuasive, nor is their attempt to show that peculiarities of 8452D have been ignored by the board in a way that makes another provision superfluous. It's fairly clear that 8452D incorporates the computation formulas of 8415, just as in Pittsburgh, 8337A incorporated the formulas of 8339. And there's really no material difference in that regard. OPM makes the argument that because it's a minimum annuity, that is, it's an alternate to the basic minimum disability annuity for those whose years of service would entitle them to more, because it's a floor in that sense, that means that you should use the minimum formula under 8415. But, in fact, the statute only, which is 8415A, but the floor is 8415, not 8415A. That's simply read into the statute, and it's very similar to the argument that the court rejected in Pittsburgh. Addressing the argument that subsection C is made, rendered superfluous by the board's view of D, subsection C is a provision that applies only to those who retire in disability after age 62 or after they meet the requirements for immediate retirement based on age in service. And in those cases, it substitutes an age in service section 8415 annuity for the disability annuity. Your problem, Mr. Morrow, is that when we look at 8415D, it talks about an employee retiring under 8412, and Mr. Springer doesn't qualify under 8412. Well, that would be true, but it's the same argument that was rejected in Pittsburgh, that it doesn't make sense that when the statute is incorporated only for purposes of using the computation formula and not to impose an additional requirement that they meet age in service in order to have an immediate retirement. Otherwise, there would be no point in the whole provision, because if they did meet that, they could obtain it in the other way, which is what the court found in Pittsburgh. Now they're arguing that because subsection C authorizes or actually requires that a person who's met retirement age will have the regular type of annuity, that that would be undermined if D provides that in the case of an individual who would get more if you use the age in service computation more than the basic disability annuity, the flat 40% of average pay, that that would mean that there's no function left for 8452C, but the purpose of 8452C is very likely the same purpose as 8452B, which requires a redetermination of a disability annuity when they reach age 62 and replacing it with an age in service annuity. The legislative history, and this is recognized by OPM in its briefs as well, the legislative history showed that there was a concern that disability annuitants who received 40% of average pay would be getting more money in retirement than people who have worked a full career. For example, a regular FERS employee gets only 1% per year. If they worked 30 years, they would only get 30%. So what Congress did was, so the purpose of B, the recalculation of B and of C as well, is to equalize these two groups of people's annuity by requiring that once this age or the requirements are met, they'll all receive an annuity based on their years of service. So the D, which allows a higher annuity where the person's age in service calculations would exceed the floor, does not make C unnecessary because C in some cases requires that the disability annuity be lowered because of this concern that the disability annuitants in retirement age should not get more than the working retirees. So while they may overlap, and they do overlap in the case of an individual receiving an enhanced annuity such as Mr. Adkins, although this case is special because he had early service in the coverage by CSRS, but even if he'd been inferred the entire time, because of the higher formula, the enhanced annuity, after 26 years he would be receiving more than the flat rate disability annuity. So for this group of people, C does provide a benefit, and D, if it applies, C and D would overlap in that case. They would both provide this benefit. But that doesn't make C superfluous because in other cases it serves this purpose of equalizing the two groups' annuities. Another point that OPM makes to suggest that we can't accept this literal reading, the board clearly was reading D and giving it a plain language reading because it incorporates 8415. It doesn't only incorporate 8415A. OPM has also objected that it will have the effect of creating a windfall because the redetermination of annuity at age 62, and that's at the point at which a disability annuitant is given an age and service type annuity instead, this will lead to their having a larger annuity than a firefighter who is required to retire at 57. In our brief we've mentioned that there are a number of variables that suggest that isn't always going to be the case. But when it is the case, the reason is because of these additional five years. The 62 redetermination date versus the retirement of 57. But the same disparity could also occur in the case of just ordinary employees is the ordinary voluntary retiree left at the now minimum age of 57, he also would have five less years than the individual who is given because at the redetermination all the years on disability are added to the years of service in computing the retirement annuity. The Congress was aware when it enacted this statute, subsection B, which sets the redetermination date, they were aware, of course, of these retirement dates, and they must have been aware that while they had an equalizing purpose, at the same time it was not going to be perfectly accomplished when they used the age 62, but they chose that date, that age, as part of their effort to coordinate with Social Security because old age Social Security benefits start at that point. So OPM is basically, because it doesn't like the result, it thinks there's something unfair in what Congress has done, it's just trying to rewrite the statute. But we submit they don't have the authority to do that and that the board is required to enforce the statute as written or apply it as it's written. Moreover, even if they did have authority to do it, the correction would be to subtract these five years not to deny a firefighter enhanced annuity for their entire career, something that they have contributed to, they do contribute additional amount, and that amount cannot be refunded, just as with the CSRS employees who were at issue in the Pitzker case. For that reason, we submit that the board's reading of the statute is consistent with the law and does not have any unreasonable effects that Congress could not have intended as suggested by OPM. Thank you, Mr. Morrow. Ms. Henn. Thank you, Your Honor. May it please the court. Mr. Adkins was forced to retire early because of a disability after serving approximately 22 years as a civilian firefighter and approximately four years on active duty in the Air Force. Under OPM's interpretation of the statute, no firefighter forced to retire early because of a disability would ever receive enhanced benefits,  OPM's interpretation of Section 8452D1 cannot be squared with its plain terms. There's no dispute that Section 8452D1, which is set forth on page 7 of the statutory addendum at the back of our red brief, requires a comparison between the disability annuity calculations and the basic annuity calculations. There's also no dispute that the basic retirement calculations by their terms apply to employees retiring at normal retirement age. Although a disabled employee forced to retire early does not retire under the basic retirement provisions, Section 8452D1 entitles the disabled annuitant to an annuity computed pursuant to 8415 if that section yields a higher amount. The plain language of Subsection D1 states that the disability annuity shall not be less than the amount of an annuity computed under Section 8415 and it excludes only Subsection G of that section. So Congress knew how to exclude particular computations and it did so in the statute. It excluded Subsection G. The reading that OPM is urging would exclude all subsections of 8415 except Subsection A, which just doesn't square with the plain language. OPM argues that... What do we do with the fact that 8415 has an A and a D, each with different formulas, and D refers to 8412, whose requirements Mr. Springer doesn't meet, and A doesn't have any such requirements. Of course, A says, except as otherwise provided in this section, and does D otherwise provide? But does D otherwise not provide because it refers to 8412's requirements? And why didn't Congress write a clear statute? That is a question I cannot answer, Your Honor. However, Subsection A, which is on page 5 of our statutory addendum, shows that every... Oh, I'm sorry. 8415A, which is actually at page 2... Well, we have a statute. Subsection A does indeed include an eligibility requirement. Subsection A states that the basic rate will apply to individuals retiring under this subchapter. Now, this subchapter is the basic retirement subchapter, and eligibility provisions for that subchapter are set for the 8412. And so, in fact, every subsection of 8415 includes eligibility requirements that an employee who was forced to retire early because of disability would not meet. But you don't think the eligibility requirements of D should be respected? Because the plain language of D1 requires this comparison to annuities calculated under Section 8415, it appears that Congress, rather than intending to adopt the eligibility requirements that are cross-referenced in Section 8412, instead intended a comparison between what a disability annuitant would receive under 8452 and what that individual would receive had he or she been fortunate enough to work until normal retirement. So that's how the statute instructs us to determine which subsection of 8415 would apply. In Mr. Adkins' case, having served 22 years as a civilian federal firefighter, if he had reached the normal retirement age of 8412D, would have been entitled to the enhanced annuity. And so, therefore, 8452D1 requires a comparison with the basic disability rate and the enhanced rate. OPM argues that Section 8452C provides a reason to read 8452D contrary to its plain language. OPM argues that C demonstrates that Congress intended only those employees who meet the age and service requirements for normal retirement to receive enhanced annuities. But again, OPM's interpretation conflicts with the plain language of Subsection C. That subsection begins with the words except as provided in Subsection D. So Congress expressly contemplated that a different rule would apply under Subsection D. And in addition to conflicting with the language that's written in Subsection C, OPM asks this Court to read words into that subsection that aren't there. Subsection C does not state that an annuity shall be computed under Subsection 8415 only if the employee satisfies the age and service requirements of 8412. Congress didn't include that word only and instead expressly recognized that a different rule may apply under Subsection D. Tell me again why D, 8415D, takes precedence over A. You pointed out that A says an employee retiring under this subchapter. And I understood you to be dismissing A because of that qualification. Mr. Springer didn't retire under this subchapter. But D also has qualifications requiring under 84D and he doesn't qualify under that either. That's correct. But why do you dismiss A in favor of D? We don't dismiss A, Your Honor. We just believe that Subsection D-1 makes clear that Congress intended a comparison between annuities calculated under Section 8415 and the basic formula. Yeah, but the calculation under 8452D-1, computed under, refers to 8415, which includes both A and D. Correct. And Congress excluded only Subsection G. So we know that Congress intended comparisons with all of the other subsections and the question in any particular case is which subsection applies. And we submit that the way to determine which subsection applies is to determine which subsection would have applied to the disabled annuitant had that individual reached the normal age and years of service for basic retirement. So Subsection A would apply to certain individuals, non-firefighters, a regular employee. And indeed, in some cases, Subsection A would apply and would result in an annuity lower than the amount under the basic disability provision. So it's just a comparison that Congress has required and for firefighters, Subsection D would apply. Again, OPM's interpretation, which is contrary to the statute, would have only Subsection A be compared, only the basic retirement rate of Subsection A, and would result in no firefighter who's forced to retire early ever receiving an enhanced annuity. And that despite having worked potentially many, many years, like Mr. Adkins, 22 years, paying extra into the system to receive that benefit. Unless the panel has any further questions, we would ask that the Court affirm the Board's statute. Thank you, Ms. Henn, Mr. Morrow, Ms. Conrad. Case is taken under submission. Oh, you have some rebuttal time. Excuse me. Thank you. I'd just like to clear up a couple points that MSPB and Mr. Adkins' counsel made, and that is, for one thing, is this situation is rather unique in that Mr. Adkins, because of his prior CSRS service, received a higher annuity under the computation of 8415D than he would under 8452A. Because normally 8452A is a very generous disability benefit when you don't have Social Security disability benefits taken out. And as the MSPB noted, you know, after 26 years, a firefighter would be his... Okay, after 26 years, the comparison between the calculation 8452A and 8415D, the 8415D comparison would be higher. But we don't disagree with that because after 26 years of service, he could obtain an immediate firefighter annuity by retiring under 8412. Or if he chose a disability retirement, he could obtain the 8415D calculation through subsection 8452C. It's also important to note that subsection 8415D clearly operates as a minimum annuity provision, both looked at within the statute, and its purpose is to provide an annuity when Social Security disability benefits completely wipe out your annuity or significantly reduce them. And in this situation, it's important to look at what constitutes a minimum annuity. A minimum annuity is computed under 8415A, not an enhanced provision under 8415D. It's improper for the MSPB to use a minimum annuity provision to award an enhanced annuity under 8415D. It actually goes beyond this Court's holding in Pitzker, which did not do that. Pitzker looked at language that awarded for the computation of a disability annuity. It did not look at a minimum annuity provision to give that enhanced rate to disabled law enforcement and firefighters. And it's also error to think that the law enforcement officer will never get his contribution back with regular disability retirement. Like I said before, the disability retirement is very generous, and in most cases, if there's no Social Security benefits involved, until the law enforcement officer works 26 years, the disabled annuity provision would provide a more generous benefit. And under FERS, it only takes 18 months to qualify for disability retirement, as opposed to CSRS, which takes five years to qualify for disability retirement. So in most cases, the law enforcement officer will get all their contributions back from disability retirement, and they can also possibly recover from their disability. It could be temporary. They could go back to work as a law enforcement officer or a firefighter and again work toward earning the age and service criteria for an immediate voluntary retirement with the firefighter or law enforcement enhanced annuity rate. We respectfully request that this Court reverse the MSPB's holding that disabled firefighters who do not meet the age and service requirements for immediate retirement are entitled to enhanced firefighter annuity. Thank you. Thank you, Ms. Conrad. Thank you all. The case is taken into submission. All rise. The honorable Court is adjourned tomorrow morning at 10 o'clock a.m.